**UNITED STATES of America,
Plaintiff-Appellant,**

**v.**

**Roscoe Emory DEAN, Jr.,
Defendant-Appellee.**

**In re UNITED STATES of
America, Petitioner.**

**Nos. 84–8386, 85–8035
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 17, 1985.

Rehearing and Rehearing En Banc
Denied Feb. 20, 1985.

Before GODBOLD, Chief Judge, KRAV-ITCH and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

This case raises two important issues: (1) whether appeal or mandamus is the proper remedy when the government alleges that the district court has acted beyond the scope of its lawful authority in reducing the sentence of a convicted criminal defendant; and (2) whether the district court may reduce a defendant's sentence under Rule 35(a) of the Federal Rules of Criminal Procedure when the original sentence was based on an erroneous prediction concerning the amount of time the defendant would likely serve in prison prior to parole. After reviewing our prior decisions, we conclude that (1) mandamus, not appeal, is the government's proper remedy, and (2) the district court lacked the authority to enter the order reducing the defendant's sentence under Rule 35(a).*

### A. *The Facts*

The facts are largely undisputed. Roscoe Dean, a former Georgia state senator, was tried and convicted in the United States District Court for the Southern District of Georgia on three counts of conspiracy to import cocaine, marijuana, and methaqualone, in violation of 21 U.S.C. §§ 956,

Patty Mukaup Stemler, Appellate Section, Crim. Div., Washington, D.C., for plaintiff-appellant.

Donald E. Wilkes, Jr., University of Ga. School of Law, Athens, Ga., for defendant-appellee.

---

* The statutes and rules discussed in this opinion are those that were in effect when the relevant event occurred. The Comprehensive Crime Control Act of 1984, Pub.L. No. 98-473, 98 Stat. 1837 (1984), which was signed into law on October 12, 1984, drastically revises the procedures for sentencing federal criminal defendants. Under Chapter II of the Crime Control Act, also designated as the Sentencing Reform Act of 1984, sentences will be imposed by the district courts pursuant to guidelines established by the newly created United States Sentencing Commission. Id. at §§ 211-12, 98 Stat. at 1987-2011 (to be codified at scattered sections of 18 U.S.

C.). The Crime Control Act confers on the courts of appeals jurisdiction to review, on several specific grounds, sentences imposed by the district courts. Id. at § 213, 98 Stat. at 2011-13 (to be codified at 18 U.S.C. § 3742). The Crime Control Act also amends Rule 35 of the Federal Rules of Criminal Procedure to eliminate the district courts' discretion to reduce a defendant's sentence. Under the new Rule 35, the district court may correct illegal sentences only on remand from the courts of appeals or on motion of the government. Id. at § 215(b), 98 Stat. at 2015-16. These sentencing reforms, of course, do not apply to the instant case.

963.[1]  In June, 1980, Dean was sentenced to concurrent five-year prison terms and fined $10,000 for each offense.  On appeal, the former Fifth Circuit ruled that the evidence at trial showed the existence of only one conspiracy, not three, and remanded the case to the district court with instructions to vacate two of the three convictions and to resentence Dean.  *United States v. Dean*, 666 F.2d 174 (5th Cir. Unit B), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).  On April 16, 1982, Dean was resentenced by the district court to five years' imprisonment and a fine of $10,000.[2]

On September 15, 1982, Dean filed a motion for reduction of sentence under Rule 35(b) of the Federal Rules of Criminal Procedure.[3]  On October 22, the district court denied the motion.  On November 1, Dean moved for reconsideration; two weeks later, that motion likewise was denied.

On February 1, 1984, Dean filed a motion to correct an illegal sentence pursuant to Rule 35(a).[4]  In his motion, Dean alleged that the sentencing court had relied on an erroneous prediction by a probation officer concerning the length of time Dean would likely serve in prison prior to parole.  The probation officer had predicted that, under the Parole Commission's guidelines, and assuming the imposition of a sentence of not more than nine years' imprisonment, Dean would likely serve between 24 and 36 months prior to parole.  On July 14, 1983, however, the Parole Commission determined that Dean would not become eligible for parole until he had served 40 to 52 months of his five-year sentence.[5]  On January 17, 1984, after an exchange of letters between Dean, the district court, and the Parole Commission, the Commission affirmed its prior decision as to Dean's parole eligibility.

On April 5, 1984, the district court granted Dean's motion, "modified" Dean's sentence "to be limited to time already served by the defendant," and ordered Dean released from prison *instanter*.[6]

1.  The facts and circumstances of Dean's crimes are not relevant to the issues before us.  A recitation of those facts is contained in the opinion of the former Fifth Circuit on Dean's direct appeal from his conviction.  *See United States v. Dean*, 666 F.2d 174 (5th Cir. Unit B), *cert. denied*, 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).

2.  The sentence imposed by the district court did not exceed the maximum sentence authorized by the statutes under which Dean was convicted.

3.  Rule 35(b) provides:
    (b) *Reduction of Sentence*.  The court may reduce a sentence within 120 days after the sentence is imposed or probation is revoked, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation.  Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.
    Although Dean did not specify the subdivision of Rule 35 under which his September 15, 1982 motion was made, it is apparent from the content of the motion that Dean was requesting reduction of his sentence under Rule 35(b), and not correction of an illegal sentence under Rule 35(a).

4.  Rule 35(a) provides:
    (a) *Correction of Sentence*.  The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

5.  The Parole Commission's decision apparently was based on the Commission's view of the seriousness of Dean's crimes.  Dean does not challenge the validity of the Parole Commission's determination of his parole eligibility.

6.  The district court entered the following order:
    ORDER
    Roscoe Emory Dean, Jr. was convicted, after a jury trial in this court, on May 14, 1980.  His conviction was substantially affirmed by the Fifth Circuit Court of Appeals Unit B on January 22, 1982.
    The defendant has filed a motion to reconsider the denial of his motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure.
    After due consideration thereof, the sentence of confinement heretofore entered is modified to be limited to time already served by the defendant, and he is ordered released

The government filed a notice of appeal[7] and a petition for a writ of mandamus[8] on the grounds that the district court lacked the authority to reduce Dean's sentence. On June 27, a panel of this court denied without opinion the government's petition for a writ of mandamus. *In re United States*, No. 84–8475 (11th Cir. June 27, 1984) (unpublished order). Shortly thereafter, Dean filed a motion to dismiss the government's appeal for lack of jurisdiction. The government's memorandum in opposition to Dean's motion suggested that, in the event the court granted the motion to dismiss the appeal, the court should "reinstate" the government's petition for a writ of mandamus. The government subsequently filed motions to (1) consolidate the appeal with the previous mandamus action, (2) vacate the order denying the petition for a writ of mandamus, and (3) refile the petition for a writ of mandamus.

## B. *The Motion to Dismiss the Government's Appeal*

■ In the motion to dismiss the government's appeal, Dean contends that this court lacks jurisdiction to hear the appeal because no statute permits the government to appeal a sentence modification order entered in a Rule 35 proceeding. The government, on the other hand, contends that the district court's order is appealable as a "final decision" under 28 U.S.C. § 1291.[9]

This issue is controlled by the former Fifth Circuit decision in *United States v. Denson*, 588 F.2d 1112 (5th Cir.), *aff'd in part and modified in part en banc*, 603 F.2d 1143 (5th Cir.1979).[10] In *Denson*, the district court sentenced three defendants to terms of probation, despite the fact that the defendants had been convicted of offenses for which probation could not lawfully be imposed. The government filed a motion to correct the sentences. When the motion was denied, the government appealed.[11]

The former Fifth Circuit dismissed the government's appeal for lack of jurisdiction. The court first noted the long-established rule that the government cannot appeal in a criminal case without the express

---

*instanter.* All other provisions of said sentence heretofore rendered are to remain in full force and effect.

SO ORDERED, this 5th day of April, 1984.

Dean has chosen on appeal to treat the district court's order as one granting relief under Rule 35(a). In any event, we note that the court could not properly have granted relief to Dean under Rule 35(b). The Supreme Court has held that the 120-day time limit contained in Rule 35(b) is jurisdictional. *United States v. Addonizio*, 442 U.S. 178, 189, 99 S.Ct. 2235, 2242–43, 60 L.Ed.2d 805 (1979); *accord, United States v. Rice*, 671 F.2d 455, 459 (11th Cir.1982); *United States v. Norton*, 539 F.2d 1082, 1083 (5th Cir.), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1976); *United States v. Mehrtens*, 494 F.2d 1172, 1175 n. 1 (5th Cir.), *cert. denied*, 419 U.S. 900, 95 S.Ct. 182, 42 L.Ed.2d 145 (1974). It is true that, if a motion to reduce sentence under Rule 35(b) is properly filed within the 120-day period, the district court retains jurisdiction for a "reasonable time" after the expiration of the 120 days "in those rare circumstances in which it is unable to decide the motion" within the 120-day period. *See Rice*, 671 F.2d at 459 n. 5; *United States v. Mendoza*, 581 F.2d 89, 90 (5th Cir.1978) (*en banc*). This is not such a case, however, since Dean has not alleged the existence of any "rare circumstances" warranting relief from the 120-day limit. *See*

*Rice*, 671 F.2d at 459 n. 5; *Mehrtens*, 494 F.2d at 1176.

We also note that the 120-day limit applies even where the district court purports to reconsider an earlier, timely Rule 35(b) motion. *See Norton*, 539 F.2d at 1083; *see also United States v. Hetrick*, 644 F.2d 752, 756 (9th Cir.1981) ("Nor is the jurisdictional defect cured by styling the subsequent motion as a 'motion for reconsideration.' ").

7. No. 84–8386, filed May 2, 1984.

8. No. 84–8475, filed June 11, 1984.

9. 28 U.S.C. § 1291 provides, in pertinent part:

The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court.

10. The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

11. In *Denson*, as in the instant case, the government also filed a petition for a writ of mandamus under Rule 21 of the Federal Rules of Appellate Procedure. *See infra* note 20.

authorization of Congress. *Denson,* 588 F.2d at 1125.. The court then explained:

[C]ertain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291 ... just as in civil litigation orders of equivalent distinctness are appealable on the same authority ....

*Id.* at 1126 (quoting *Carroll v. United States,* 354 U.S. 394, 403, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1956) (footnote omitted)). The court pointed out, however, that "[t]he Supreme Court [has] emphasized the rareness of such orders." *Denson,* 588 F.2d at 1126. The court listed the following factors to be used in determining the appealability of a district court's order under 28 U.S.C. § 1291:

The order appealed from must be severable from, and collateral to, the main case; the right involved must be so important that to deny review would be inappropriate; the issue presented must be such that postponing review until the final termination of the case would cause the irreparable loss of the valued right.

*Id.* (citation omitted). Applying these factors to the case before it, the court concluded that "[t]he sentencing process is the inevitable culmination of a successful prosecution; *it is an integral aspect of a conviction."* *Id.* (emphasis added). The court thus held that "the orders of sentence and probation are not possessed of 'sufficient independence' from the criminal case to permit a Government appeal under 28 U.S.C. § 1291," *id.* (citations omitted), and dismissed the government's appeal.[12]

The order in the instant case, like the one in *Denson,* fails to qualify as. a "final order" under 28 U.S.C. § 1291 because it is not "possessed of 'sufficient independence' " from the underlying criminal case. The government attempts to distinguish *Denson* on the grounds that *Denson* involved an appeal of the district court's original sentencing order, whereas here the government seeks to appeal an order modifying Dean's original sentence. We do not find this distinction significant. Under *Denson,* the entire "sentencing process" is "an integral aspect of a conviction." 588 F.2d at 1126. In our view, both the original sentencing order and the modification order are part of the "sentencing process" discussed in *Denson.* Hence we reject the government's contention that the modification order is "sufficiently independent" from the underlying criminal case to be appealable under 28 U.S.C. § 1291, and we grant Dean's motion to dismiss the government's appeal.[13]

---

**12.** On rehearing *en banc,* the former Fifth Circuit affirmed and reinstated the portion of the panel opinion concerning the dismissal of the government's appeal. *Denson,* 603 F.2d at 1145.

The *Denson* panel opinion also discussed the Criminal Appeals Act, 18 U.S.C. § 3731, which enumerates certain instances in which the government may bring an appeal in a criminal case. Although 18 U.S.C. § 3731 was enacted "to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit," *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975), the court explained that the statute "cannot be construed to authorize a Government appeal from any and every District Court order." *Denson,* 588 F.2d at 1125. The court concluded that the sentencing orders were "in no material way even related to the types of orders set out in Section 3731." *Id.* at 1126. The court therefore held that 18 U.S.C. § 3731 did not provide a statutory basis for the government's appeal. *Id.; accord, United States v. Fer-*

*ri,* 686 F.2d 147, 151 (3d Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *United States v. DeMier,* 671 F.2d 1200, 1204 n. 12 (8th Cir.1982). *Denson* forecloses any possible contention that 18 U.S.C. § 3731 authorizes a government appeal in the instant case.

**13.** The government cites *United States v. Krohn,* 700 F.2d 1033 (5th Cir.1983), for the proposition that, under 28 U.S.C. § 1291, sentence reduction orders entered in Rule 35 proceedings are distinguishable from original sentencing orders. In *Krohn,* the current Fifth Circuit entertained the government's appeal from a sentence reduction order entered in a Rule 35 proceeding. *Id.* at 1035. The court did not discuss the appellate jurisdiction issue, however, nor did the court even mention *Denson.* We therefore decline to give precedential weight to *Krohn* on the appellate jurisdiction issue.

We acknowledge that at least three other circuits have ruled that the government may ap-

## C. *The Effect of the Prior Denial of the Government's Petition for a Writ of Mandamus*

We will treat the government's three pending motions as a new petition for a writ of mandamus. Because another panel of this court previously denied an identical petition filed by the government, *In re United States*, No. 84–8475 (11th Cir. June 27, 1984) (unpublished order), we must decide whether the doctrines of *res judicata* or law of the case preclude us from reaching the merits of the new petition.

In general, a prior decision will have *res judicata* effect only if it was a decision "on the merits." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *see generally* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4435 (1981).[14] Accordingly, a prior denial of a petition for a writ of mandamus will have *res judicata* effect only if the denial was "on the merits," but not if the denial was the result of the special limitations inherent in the writ:

> As to ... more limited uses of extraordinary writs, on the other hand, preclusion ordinarily is inappropriate if the first decision was governed by curtailed procedures, discretionary grounds of decision, or special limits....
>
> .    .    .    .    .
>
> ... Denial of a writ commonly rests on severe limitations of jurisdiction and discretion that prevent the court from applying ordinary tests of reversible error. If a decision is confined by these limitations, it should not preclude examination of the merits in later proceedings. Preclusion is appropriate only if denial rested on the merits of the questions presented rather than remedial limitations.

18 C. Wright, A. Miller & E. Cooper, *supra*, § 4445 at pp. 393–94, 396–97 (footnotes omitted); *see Heinemann Chemical Co. v. Heiner*, 92 F.2d 344, 346 (3d Cir.1937) (denial of petition for writ of mandamus has no *res judicata* effect on later suit to recover taxes paid, because denial of petition was based on laches, not merits of controversy); *cf. Hoffman v. Blaski*, 363 U.S. 335, 340 n. 9, 80 S.Ct. 1084, 1088 n. 9, 4 L.Ed.2d 1254 (1960) (denial of leave to file petition for writ of mandamus has no *res judicata* effect on later petition for writ, in part because denial of leave was "not upon the merits"); *Skil Corp. v. Millers Falls Co.*, 541 F.2d 554 (6th Cir.), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 631 (1976) (denial on the merits of petition for writ of mandamus has *res judicata* effect).

Here, the prior denial of the government's petition was announced in a one-line, unpublished order. *In re United States*, No. 84–8475 (11th Cir. June 27, 1984) (unpublished order). The order does

---

peal sentence reduction orders entered under Rule 35. *See United States v. DeMier*, 671 F.2d 1200 (8th Cir.1982); *United States v. United States District Court*, 645 F.2d 7 (6th Cir.1981); *United States v. Hetrick*, 644 F.2d 752 (9th Cir. 1981), *modifying* 627 F.2d 1007 (9th Cir.1980). We do not find these opinions persuasive. The Ninth Circuit's original opinion in *Hetrick* concluded that 28 U.S.C. § 1291 provided the statutory basis for government appeals of sentence reduction orders, and that 18 U.S.C. § 3731, which previously had been held not to permit government appeals of such orders, did not preclude section 1291 jurisdiction. The court therefore held that the government may appeal such orders under section 1291. *Hetrick*, 627 F.2d at 1010. The court later modified its holding to state that the government may appeal such orders under section 3731. *Hetrick*, 644 F.2d at 754. We find this modified holding to

be inconsistent with the rest of the *Hetrick* opinion, and we decline to adopt the Ninth Circuit's position. The Sixth Circuit rested its decision solely on the original opinion in *Hetrick*, without even mentioning the amended opinion. *United States v. United States District Court*, 645 F.2d at 8. Finally, the Eighth Circuit simply followed the Sixth Circuit. *DeMier*, 671 F.2d at 1204.

**14.** One exception to this general rule is that a prior decision not "on the merits" will have *res judicata* effect as to issues that were actually decided. *See Acree v. Air Line Pilots Ass'n*, 390 F.2d 199, 203 (5th Cir.) (prior decision on jurisdictional grounds precludes further litigation of jurisdictional issue), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968). This exception, however, is not applicable here.

not provide us with a basis for determining the grounds on which the panel denied the petition. In this situation, we find persuasive the conclusion reached by the D.C. Circuit in *United States v. Hubbard,* 650 F.2d 293 (D.C.Cir.1980). In *Hubbard,* the Church of Scientology, a third party to a criminal case, had previously petitioned the appellate court for a writ of mandamus to prevent the district court from unsealing certain documents. The petition was denied without an opinion. *In re Church of Scientology of California,* No. 79–2318 (D.C.Cir. Nov. 21, 1979) (unpublished order). The Church then appealed the district court's order unsealing the documents. On appeal, the D.C. Circuit explained:

> Nevertheless, because of the writ's extraordinary nature, this court's earlier denial, *without statement of reasons,* of the Church's petition for mandamus ... has no bearing on our decision of these appeals.

*Hubbard,* 650 F.2d at 310 n. 62 (emphasis added; citations omitted); *see also Hospes v. Burmite Div. of Whittaker Corp.,* 420 F.Supp. 806, 809 (S.D.Miss.1976) (one-line denial of petition for writ of mandamus has no *res judicata* effect on later wrongful death action, because of inability to determine basis for denial and because mandamus is "extraordinary remedy" that is "reserved only for the most exceptional causes"). We adopt the rationale of *Hubbard,* and hold that, because we cannot determine the basis for the prior denial of the government's petition for a writ of mandamus, the denial does not have *res judicata* effect and does not prevent us from reaching the merits of the new petition.

■ Similarly, the law of the case doctrine does not prevent us from reaching the merits of the new petition. Although one aspect of the doctrine is that an appellate panel generally defers to a prior ruling in the same case by another panel of the same court, *see United States v. Burns,* 662 F.2d 1378, 1384 (11th Cir.1981); *Morrow v. Dillard,* 580 F.2d 1284, 1289–90 (5th Cir.1978); *see generally* 18 C. Wright, A. Miller & E. Cooper, *supra,* § 4478 at pp. 794–96, the doctrine applies only to issues that actually were decided in the prior proceeding, either expressly or by necessary implication. *See Morrow,* 580 F.2d at 1290. Thus, when the denial of a petition for a writ of mandamus is, or may be, the result of the special limitations inherent in the writ, such a denial does not establish the law of the case. *See Connolly v. Pension Benefit Guaranty Corp.,* 673 F.2d 1110, 1112–13 (9th Cir. 1982) ("We hold ... that a summary denial of a petition for a writ of mandamus does not establish the law of the case."); 18 C. Wright, A. Miller & E. Cooper, *supra,* § 4478 at p. 798 ("Rulings that simply deny extraordinary relief for want of a clear and strong showing on the merits ... do not trigger law of the case consequences.").

■ Here, the government's previous petition for a writ of mandamus was summarily denied, perhaps on the grounds that the government's appeal was still pending rather than on the merits. *See United States v. Denson,* 603 F.2d 1143, 1147 n. 2 (5th Cir.1979) (*en banc*) ("[A] court will not issue a writ of mandamus unless no other remedy is available. The lack of a remedy by appeal or in some other fashion is ... a prerequisite to its issuance ...."). We therefore hold that, under the unique procedural circumstances of this case, the summary denial of the previous petition does not establish the law of the case and does not prevent us from reaching the merits of the government's new petition.[15]

■ Dean contends that the government is guilty of laches because it did not attempt to contest the denial of the prior petition until November 5, 1984, more than four months after the entry of the order denying the petition. The government's

---

15. We emphasize that our holding is based on the unique procedural circumstances of this case, and does not authorize generally the refiling of previously denied petitions for writs of mandamus. We express no opinion concerning whether, in general, the prior denial of a petition for a writ of mandamus may preclude a court from reaching the merits of a subsequent petition seeking the same remedy.

explanation for this delay, however, is reasonable: Knowing that its appeal was still pending, the government justifiably assumed that the panel had denied the petition for a writ of mandamus on the grounds that appeal, not mandamus, was the proper remedy.

The instant case is distinguishable from *United States v. Olds*, 426 F.2d 562 (3d Cir.1970), a sentence reduction case in which the court denied the government's petition for a writ of mandamus under the doctrine of laches. In *Olds*, the government waited nearly three months before taking *any* steps to challenge the sentence reduction order. Here, by contrast, the government quickly and unequivocally challenged the order reducing Dean's sentence.[16] Because Dean could not have been misled about the government's intent to challenge the reduction of his sentence, *Olds* is inapposite.

This case is more closely analogous to the recent Third Circuit decision in *United States v. Ferri*, 686 F.2d 147 (3d Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). In *Ferri*, the government filed a timely notice of appeal of a sentence reduction order, but did not file a petition for a writ of mandamus until almost three months later. The court ruled that mandamus was the proper remedy, and rejected the defendant's argument that the government was guilty of laches:

> [F]rom the outset, [the defendant] was put on notice that the government was challenging the reduction of his sentence. After filing its appeal, the government, being justifiably uncertain as to the proper procedural vehicle for review of an order reducing a criminal sentence, filed its petition for a writ of mandamus .... Thus, in view of the fact that in this case

the government expeditiously appealed the order in question, we reject [the defendant's] contention that the government is guilty of laches with respect to its filing of the mandamus petition.

*Id.* at 153 (citation omitted).

We agree with the views expressed by the Third Circuit in *Ferri*, and we cannot say that the government acted unreasonably in the instant case. We therefore hold that the government was not guilty of laches in contesting the denial of the prior petition for a writ of mandamus.

### D. *The New Petition for a Writ of Mandamus*

█ Finally, we address the merits of the new petition for a writ of mandamus. The government contends that the writ should issue because the district court lacked the authority under Rule 35 to reduce Dean's sentence and because mandamus is the proper remedy. Dean responds that the district court had the authority to "correct" the sentence under Rule 35(a) because the sentence was originally entered on the basis of an erroneous material assumption about the length of time he would likely serve in prison prior to parole. Dean contends that, in view of this erroneous assumption, his original sentence violated the due process clause.

Rule 35(a) provides that "[t]he court may correct an illegal sentence at any time." Fed.R.Crim.P. 35(a). The Supreme Court's decision in *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), however, completely forecloses Dean's argument that the sentence was "illegal" merely because the sentencing judge was mistaken about the length of time Dean would likely serve prior to parole.[17] In *Addonizio*, the Court explained:

---

**16.** The government filed its appeal on May 2, 1984, less than one month after the entry of the sentence reduction order.

**17.** The facts in *Addonizio* were strikingly similar to those in the instant case. Addonizio, the former mayor of Newark, New Jersey, was convicted of conspiracy to commit extortion along with numerous substantive counts of extortion. He was sentenced to 10 years in prison. After

serving 57 months, Addonizio received a hearing before the Parole Commission, but the Parole Commission denied him parole. The district court that had originally sentenced Addonizio then granted him relief under 28 U.S.C. § 2255, a statute permitting collateral attack on a sentence "imposed in violation of the Constitution or laws of the United States." The district court stated that its decision to grant relief un-

The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges....

The import of this statutory scheme is clear: *the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term.* The judge may well have expectations as to when release is likely. *But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met....* [W]e hold that subsequent actions taken by the Parole Commission—whether or not such actions accord with a trial judge's expectations at the time of sentencing—do not retroactively affect the validity of the final judgment itself.

*Id.* at 188–90, 99 S.Ct. at 2242–43 (emphasis added).

■ The Court's message in *Addonizio* could not have been stated more clearly. A sentence is not "illegal" simply because the original sentencing judge mistakenly believed that the Parole Commission would release the defendant before the end of the defendant's full sentence. Whether the sentencing judge's belief was based on the judge's own knowledge of the parole system or on a prediction contained in the presentence report is irrelevant. The authority to determine whether a defendant

will be released on parole is vested in the Parole Commission, not the sentencing judge. The sentencing judge may not use Rule 35(a) as a means to usurp the authority of the Parole Commission.[18]

Dean argues that *Addonizio* involved a claim that the sentence was merely "illegal," whereas the instant case involves an alleged violation of due process. We are unpersuaded by this imaginative attempt to distinguish *Addonizio.* A sentence that, under *Addonizio*, is not "illegal" can hardly rise to the level of a due process violation. Moreover, in *Addonizio* the Supreme Court concluded that the sentencing court's erroneous assumption about the defendant's parole eligibility did not constitute "misinformation of constitutional magnitude"; the Court stated that "the proceeding was not infected with any error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid." *Id.* at 186, 99 S.Ct. at 2241.

■ The due process cases relied upon by Dean are completely inapposite. Those cases do indeed stand for the proposition that a sentencing court cannot rely on "false assumptions" without violating the due process clause. *See United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Baylin,* 696 F.2d 1030 (3d Cir.1982); *United States v. Tobias,* 662 F.2d 381 (5th Cir.1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982); *United States v. Stein,* 544 F.2d 96 (2d Cir.1976); *United States v. Espinoza,* 481 F.2d 553 (5th Cir. 1973); *United States v. Weston,* 448 F.2d 626 (9th Cir.1971), *cert. denied,* 404 U.S.

der 28 U.S.C. § 2255 was based on the court's frustrated expectation, at the time the original sentence was issued, that Addonizio would likely serve between three-and-one-half and four years in prison. The Third Circuit affirmed, *Addonizio v. United States,* 573 F.2d 147 (3d Cir.1978), but the Supreme Court reversed, *United States v. Addonizio,* 422 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

**18.** We do not find it significant that *Addonizio* involved a challenge to the legality of the sen-

tence under 28 U.S.C. § 2255, whereas the instant case involves a Rule 35(a) motion to correct an illegal sentence. Although the Supreme Court in *Addonizio* emphasized the limited scope of collateral attack on final judgments under section 2255, *see* 422 U.S. at 184–86, 99 S.Ct. at 2240–41, the Court's ultimate conclusion was that the decision of the Parole Commission "did not affect the lawfulness of the judgment itself—then or now." *Id.* at 187, 99 S.Ct. at 2241.

1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972); *United States v. Malcolm,* 432 F.2d 809 (2d Cir.1970). But the "false assumptions" in each of those cases related to a material *fact,* not a *prediction* about some future event. *See Tucker,* 404 U.S. at 447, 92 S.Ct. at 592 (defendant's prior criminal record); *Townsend,* 334 U.S. at 740–41, 68 S.Ct. at 1255 (defendant's prior criminal record); *Baylin,* 696 F.2d at 1033–35 (defendant's prior "illicit activities"); *Tobias,* 662 F.2d at 388 (defendant's intent to manufacture large quantity of PCP; sentencing court may not rely on "incorrect assumptions from the evidence"); *Stein,* 544 F.2d at 100 (defendant's attempt to "fix" prior sentence and defendant's feigned suicide to avoid going to jail); *Espinoza,* 481 F.2d at 555 (defendant's "bad record"; sentencing court may not rely on erroneous "factual assumption"); *Weston,* 448 F.2d at 633–34 (defendant's prior dealings in narcotics); *Malcolm,* 432 F.2d at 816 (defendant's prior criminal record; sentencing court may not rely on "material false assumptions as to any facts"). We hold that Dean's original sentence, which was not imposed on the basis of erroneous assumptions about any material facts, did not violate the due process clause.[19]

■ Because the district court lacked the authority to reduce Dean's sentence under Rule 35(a), we conclude that Dean's new sentence is unlawful. Our final inquiry concerns whether mandamus is the government's proper remedy. It is axiomatic that mandamus is an "extraordinary remedy for extraordinary causes," *United States v. Denson,* 603 F.2d 1143, 1146 (5th Cir.1979) (*en banc*), and that the issuance of a writ of mandamus "lies in large part within the discretion of the court," *id.* Nevertheless, we have held that an appellate court is constrained within a "narrow scope of discretion" when a writ of mandamus is sought to correct an unlawful sentence imposed by a trial court. *Id.* at 1146–48. As stated in *Denson:*

Absent the availability of mandamus, the limitation imposed by congress on the sentencing latitude accorded the trial court would go unheeded. The assumption of broad discretion by an appellate court in deciding whether or not to issue mandamus would be almost equivalent to granting the trial court the statutory authority denied it by congress. While relatively few cases have considered the problem in terms of principle, the Supreme Court and other appellate courts have responded to the application for the writ in such circumstances almost as if the applicant had a right to its issuance.

*Id.* at 1147. We therefore held that "if a district court exceeds the scope of its judicial authority, the aggrieved party should be granted the writ almost as a matter of right." *Id.*[20]

---

**19.** In his Rule 35 motion, Dean relied heavily on the case of *United States v. DeMier,* 520 F.Supp. 1160 (W.D.Mo.1981), *aff'd,* 671 F.2d 1200 (8th Cir.1982), for the proposition that a sentence imposed on the basis of erroneous information concerning Parole Commission guidelines violates the due process clause. We acknowledge that the district court's opinion in *DeMier* contains such language. Nevertheless, upon closer examination, it is apparent that the district court in *DeMier* ultimately granted the motion to reduce the defendant's sentence under Rule 35(b), not Rule 35(a). *See DeMier,* 671 F.2d at 1204–08 (discussing whether the district court lacked jurisdiction over the Rule 35 motion because the 120-day period expired prior to the granting of the motion). Therefore, *DeMier* is distinguishable from the instant case, and the district court's statements in *DeMier* concerning a possible due process violation must be viewed as dicta. In any event, we find the district court's due process language in *DeMier* wholly irreconcilable with the Supreme Court's opinion in *Addonizio.*

**20.** The panel opinion in *Denson* had previously indicated that mandamus was the proper remedy for an unlawful sentence. Nevertheless, the panel had declined to issue a writ of mandamus on the grounds that mandamus was an "extraordinary remedy" not warranted by the facts. *Denson,* 588 F.2d at 1111–12 ("When we examine the facts in the instant case, we do not find a compelling need for the writ. Indeed, we find a more compelling case for declining to exercise our discretion over the issuance of the writ.").

On rehearing *en banc,* the former Fifth Circuit acknowledged that "[d]iscretion might be inherent in the writ." *Denson,* 603 F.2d at 1147. The court also noted, however, that "[t]he scope of discretion is ... circumscribed by the purpose for which the writ is sought. Under some

We previously have issued writs of mandamus to compel district courts to vacate unauthorized sentence reduction orders. *See, e.g., United States v. Norton,* 539 F.2d 1082, 1083 (5th Cir.), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1976); *United States v. Mehrtens,* 494 F.2d 1172, 1176 (5th Cir.), *cert. denied,* 419 U.S. 900, 95 S.Ct. 182, 42 L.Ed.2d 145 (1974).[21] Upon the authority of these cases, and applying the principles announced in *Denson,* we conclude that mandamus is the proper remedy in the instant case. We thus grant the government's petition for a writ of mandamus to compel the district court to vacate its order reducing Dean's sentence, and direct that the writ of mandamus issue.[22]

### E. *Conclusion*

Based on the foregoing discussion, we GRANT (1) Dean's motion to dismiss the government's appeal, and (2) the government's petition for a writ of mandamus to compel the district court to reinstate the defendant's original sentence. The remaining motions are DENIED.

APPEAL DISMISSED; WRIT OF MANDAMUS ORDERED TO ISSUE.

circumstances the room for judgment is narrowly constrained." *Id.* at 1146. The court found itself "constrained by the narrow scope of discretion dictated by precedent," *id.* at 1148, and unpersuaded by the reasons given by the panel in support of its decision not to issue the writ. Therefore, the *en banc* court issued the writ of mandamus. *Id.* at 1149.

**21.** We also note that the Third Circuit has recently held that mandamus, not appeal, is the proper remedy when a district court improperly grants an untimely motion for reduction of sentence under Rule 35(b). *See United States v.* *Ferri,* 686 F.2d 147 (3d Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). The *Ferri* court held that "[s]uch an issue of judicial power falls squarely within the narrow range of cases for which mandamus is appropriate." *Id.* at 152.

**22.** As in *Norton* and *Mehrtens,* we find that formal issuance of the writ is not deemed necessary to assure the district court's compliance. A copy of this opinion issued as a mandate should suffice. *See Norton,* 539 F.2d at 1083 n. 2; *Mehrtens,* 494 F.2d at 1176 n. 2.